UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Ferrin Green and Know Your Dope L.L.C.,

*Plaintiffs*,

- against –

Run-DMC Brand LLC, NBCUniversal Media, LLC, Peacock TV LLC, Believe Entertainment Group, LLC, Erik Blamoville Sr., and Erik Blamoville Jr.,

*Defendants*.

ECF CASE

No.   24-cv-03900

**COMPLAINT**

Plaintiff Ferrin Green, a/k/a Ricky Shoebio ("Shoebio") and Know Your Dope L.L.C. ("KYD" and, together with Shoebio, "Plaintiffs"), by their attorneys Mazzola Lindstrom LLP, as and for their Complaint against Run-DMC Brand LLC ("Run-DMC"), NBCUniversal Media, LLC ("NBCUniversal"), Peacock TV LLC ("Peacock"), Believe Entertainment Group LLC, ("Believe Entertainment"), Erik Blamoville Sr. ("Blamoville Sr."), and Erik Blamoville Jr. ("Blamoville Jr." and, together with Run-DMC, NBCUniversal, Peacock, Believe Entertainment, and Blamoville Sr., "Defendants") for infringing Plaintiffs' exclusive rights under the Copyright Act (17 U.S.C. § 101 *et seq*.), and other tortious and unlawful conduct allege as follows:

**NATURE OF THE ACTION**

1.      Shoebio, a renowned photographer and creative director whose works and services have been sought after by the likes of Nike, Puma, Complex Media Group, Inc., and Samsung, to name a few, has brought this action to vindicate his rights as an artist and the rights of his company KYD in response to Defendants' blatant commercial exploitation of eight photographs ("Photographs") created by Shoebio of an August 11, 2023 performance by legendary hip hop group Run-DMC.

1

2.      In arranging for KYD's relatively last-minute access to the stage area where the performance would take place, Eric Blamoville Jr., acting on behalf of his father and Run-DMC, discussed with Shoebio that the Photographs belonged to Plaintiffs and that Plaintiffs could do with them what he wished, but that Run-DMC wanted Plaintiffs to send copies of them so they could post Shoebio's Photographs on Run-DMC's noncommercial social media account(s). Blamoville Jr. confirmed that Shoebio would be informed before any use of the Photographs was made, and that Run-DMC would document their agreement with Plaintiffs concerning the Photographs and ensure that Plaintiffs were properly credited and compensated for the Photographs.

3.      Contrary to these representations, Defendants intentionally and unlawfully used the Photographs in the documentary series "Kings From Queens" (the "Docuseries") produced by Believe Entertainment and released by Peacock, a subsidiary of NBCUniversal, without Plaintiffs' authorization and without attribution of the Photographs to Shoebio. Run-DMC's manager Blamoville Sr. has, on information and belief, claimed all lawful rights in and full artistic credit for the Photographs, as his own; and Run-DMC, acting through its representative Blamoville Sr., went behind Plaintiff's back and impermissibly licensed the Photographs to Believe Entertainment.

4.      However, Shoebio—not Blamoville Sr. or Run-DMC—is the exclusive owner of the Photographs and all intellectual property and other rights in and to the Photographs.

5.      On February 16, 2024, Shoebio applied for registration of the Photographs with the U.S. Copyright Office.

6.      The Photographs are registered with the U.S. Copyright Office with Registration No. VAu001523519  (the "Copyrights").

4875-4041-3888, v. 1

7.     Plaintiffs have never granted a license to any of the Defendants for use of the Photographs, in the Docuseries or for any use other than for use on Run-DMC's own noncommercial social media accounts.

8.     Defendants are liable for copyright infringement in violation of 17 U.S.C. § 101 *et seq.* (the "Copyright Act") because Defendants, without authorization from the copyright holder, published, reproduced, displayed, and distributed the Photographs, denied proper attribution of the Photographs to Shoebio, and wrongfully claimed that Blamoville Sr. is the author of the Photographs.

9.     Plaintiffs seek (a) monetary damages pursuant to 17 U.S.C. § 504(b); (b) equitable relief, including, *inter alia*, an order preliminarily and permanently enjoining Defendants from reproducing, displaying, distributing, or otherwise exploiting the Photographs anywhere or in any context pursuant to 17 U.S.C. § 502; (c) impoundment of any and all infringing articles pursuant to 17 U.S.C. § 503, to prevent further violations of Shoebio's exclusive rights under the Copyright Act; and (d) a declaration that Shoebio is the sole author and owner of the copyright in and to the Photographs that are the subject of this action.

10.     Further, because Defendants willfully and deliberately infringed Shoebio's copyrights and knowingly concealed Shoebio's identity as the author of the Photographs when they were licensed for use in the Docuseries, Plaintiffs also seek attorneys' fees and costs pursuant to 17 U.S.C. §§ 505 and 1203; and punitive damages for the fraudulent and malicious conduct of the Blamoville Defendants and Run-DMC.

11.     On information and belief, Run-DMC is particularly aware of the laws protecting intellectual property—and thus must have been particularly cognizant that it deliberately infringed Shoebio's copyrights by licensing the Photographs for use in the Docuseries and

passing them off as copyrighted works owned by Run-DMC—given that Run DMC the group and its affiliates have been both plaintiffs and defendants in intellectual property litigation in the past. *See, e.g.*, *Twilight Records Litigation* (N.D. Ill. 13-cv-07057) (Run DMC was alleged to have sampled, without attribution, the song "Different Strokes" in its songs "Naughty" and "Beats to the Rhyme"); *Fieger et al. v. Joseph Simmons et al.* (C.D. Cal. 06-cv-05887) (Run DMC was alleged to have sampled, without attribution, the song "My Sharona" in its song "It's Tricky"); *Run-DMC Brand LLC v. Amazon.Com, et al.* (S.D.N.Y. 16-cv-010011) (Run-DMC alleged that its trademark was used, without license, by Amazon, Walmart, Jet.Com, etc.).

## PARTIES AND JURISDICTION

12.     Plaintiff Ferrin Green is a photographer using the artistic pseudonym Ricky Shoebio and is an individual residing in New Jersey.

13.     Plaintiff Know Your Dope L.L.C. is a limited liability company organized under the laws of the State of New Jersey.

14.     On information and belief, Defendant Run-DMC Brand LLC is a limited liability company organized and existing under the laws of New York, with a business address at 1410 Broadway, Suite 1202, New York, NY 10018.

15.     On information and belief, Darryl McDaniels is the owner of Run-DMC Brand LLC, is a resident of New York, and has a business address at 1410 Broadway, Suite 1202, New York, NY 10018.

16.     On information and belief, Defendant NBCUniversal Media, LLC is a limited liability company organized and existing under the laws of Delaware, with a business address at 30 Rockefeller Plaza, New York, NY 10112-0015.

4875-4041-3888, v. 1

17.     On information and belief, Defendant Peacock TV LLC is a limited liability company organized under the laws of Delaware, with a business address at 30 Rockefeller Plaza, New York, NY 10112-0015.

18.     On information and belief, Defendant Believe Entertainment Group LLC is a limited liability company organized and existing under the laws of New York, with a business address at 27 West 24th Street, Suite 1104, New York, NY 10010.

19.     On information and belief, Defendant Erik Blamoville Sr. is an individual residing in New York who holds himself out as a representative and agent of Run-DMC with an address at 166 Norfeld Boulevard, Elmont, NY 11003. On information and belief, Defendant Erik Blamoville Jr. is Blamoville Sr.'s son, and assists Blamoville Sr. in his work on behalf of Run-DMC.

20.     This Court has subject matter jurisdiction over the first, second and third causes of action pursuant to 17 U.S.C. § 501 (copyright infringement), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights), and over the fourth, fifth, sixth, and seventh causes of action pursuant to 28 U.S.C. § 1367.

21.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a).

**FACTS**

22.     On August 11, 2023, the hip hop group Run-DMC performed at the Hip-Hop 50 event live at Yankee Stadium (the "Concert").

23.     On or about August 7, 2023, Plaintiff was contacted by Blamoville Jr. on behalf of Defendant Run-DMC, to retain the photographic services of Shoebio's company, KYD, in relation to an opening night "pop-up" event that was to take place two days before the Concert.

However, during their text exchange Blamoville Jr. explained that there was no budget to pay KYD's standard rates for photographic and creative direction services for the popup.

24.     As a result, on August 7, 2023, Shoebio requested press access for himself and a colleague for the Concert, and stated that they would capture the live performance of the group Run-DMC, as well as the sets of the other performers, in lieu of payment for KYD's photographic services.

25.     Given that the Concert was a one-time event and also likely the last performance by Run-DMC, Plaintiffs knew that the value of the photographs captured at the event, including the Photographs that were infringed by Defendants, would likely be of significant historical and commercial value and accordingly Plaintiffs were willing to forego their standard rates for photographic services at the time of the shoot because of the licensing opportunities their copyrights in the photographs would afford them.

26.     On August 10, 2023 Blamoville Jr., on behalf of Run-DMC, texted Shoebio that Run-DMC agreed to grant Plaintiffs press access to the Concert in exchange for Plaintiffs' photographic services.

27.     Shoebio and a KYD colleague were added to the official press list and given backstage access to photograph the Concert, with such access being coordinated by Blamoville Jr. on behalf of Run-DMC.

28.     During the Concert, Shoebio and his colleague were also given additional passes to gain access to the stage as well as the "pit" in order to capture photographs of Run-DMC's performance, with such access again being coordinated by Blamoville Jr. on behalf of Run-DMC.

4875-4041-3888, v. 1

29.     Shoebio and his colleague took a series of pictures at the Concert, including the Photographs that are the subject of this action.

30.     On information and belief, it is unlikely that Run-DMC will ever again perform together.  *See, e.g.*, Watch Run-DMC perform in reportedly their last show ever at the Hip Hop 50 concert in New York, Emlyn Travis, Entertainment Weekly, Aug. 12, 2023, *available at* https://ew.com/music/run-dmc-perform-last-show-ever-hip-hop-50-concert-nyc/.

31.     Shoebio took the Photographs with his own equipment, camera and lenses.

32.     Shoebio exerted complete control and complete artistic discretion over the Photographs that he took.

33.     Shoebio's Photographs are unique and comprise Plaintiff's original creative expression.

34.     Because of Shoebio's vantage point during the Concert, there are no other similar photographs of the event, despite the event having been heavily documented.

35.     There is no written agreement signed by any of the parties evidencing any agreement to consider the Photographs as "works made for hire."

36.     The Photographs are not and do not qualify as "works made for hire" under the Copyright Act.

37.     On August 11, 2023, while the parties were in the backstage area of the Concert, Blamoville Jr. told Shoebio that he would be receiving paperwork from Run-DMC so the parties could document their understanding concerning credit and compensation with respect to potential use by Run-DMC and Plaintiffs of the photographs Plaintiffs captured of Run-DMC during the Concert.

38.     During the August 11, 2023 Concert while Shoebio and his colleague were backstage, Blamoville Jr., in oral statements to Shoebio, represented to and agreed with Shoebio that, before any of the photographs Plaintiffs captured were used in any way other than on Run-DMC's noncommercial social media, Shoebio would be notified and the parties would enter into a written agreement concerning the terms of such use, including proper credit and compensation.

39.     However, none of Run-DMC, the Blamoville Defendants, or any other representative of Run-DMC or any other person or entity working with Run-DMC, ever provided Plaintiffs with the promised documentation, and Plaintiffs never signed any written agreement with anyone, including any of the Defendants, concerning the Photographs.

40.     Plaintiffs never received any payment or other compensation from any of the Defendants, or anyone working with any of them, for capturing the Photographs or for any use of the Photographs.

41.     On August 12-13, 2023, Shoebio delivered the Photographs to Blamoville Jr., as the representative of Run-DMC, via a Dropbox link, for the agreed purpose of displaying them on Run-DMC's social media.

42.     Due to the one-time nature of the event, the uniqueness and artistic skill embodied in Shoebio's Photographs, and their unpublished nature, throughout the end of 2023 and in early 2024 Plaintiffs engaged in discussions with multiple third parties, including a museum and a number of art galleries, about releasing limited edition sets of photographic fine art prints of the Photographs for sale.

43.     Run-DMC, without Plaintiff's knowledge or consent, subsequently distributed the Photographs to NBCUniversal, Peacock, and Believe Entertainment, for their use in the Docuseries.

8

44.     On information and belief, Blamoville Sr. represented to NBCUniversal, Peacock, and Believe Entertainment that he was the author of the Photographs and therefore had authority to license them to NBCUniversal, Peacock, and Believe Entertainment for use in the Docuseries.

45.     Before the official release of the Docuseries on February 1, 2024, Shoebio attended a screening of the first two episodes of the Docuseries, and thus became aware that the Photographs had been included in the Docuseries, without his knowledge or consent.

46.     On February 2, 2024, after the release of the Docuseries by Peacock, Shoebio confirmed that his Photographs were included in the Docuseries, without his knowledge or consent.

47.     Shoebio did not and has not licensed or authorized any of the Defendants to publish, reproduce, display, or distribute the Photographs in the Docuseries.

48.     On February 2, 2024, right after becoming aware of the infringing conduct, Shoebio sent Defendants notices concerning their unauthorized use of the Photographs and requested that Defendants enter into a valid licensing agreement for the Photographs and that the Photographs be credited to him.

49.     Believe Entertainment initially responded and suggested entering into a licensing agreement for the Photographs, but never followed through, and when Shoebio followed up, Believe Entertainment ignored him and failed to respond to his emails.

50.     On information and belief, Believe Entertainment did not enter into a licensing agreement with Plaintiffs because Blamoville Sr. impermissibly interfered with the negotiations.

51.     NBCUniversal and Run-DMC did not respond to Shoebio's notices concerning their unauthorized use of his Photographs in the Docuseries.

52.     On February 12, 2024, Believe Entertainment informed Shoebio that the Photographs had been removed from the Docuseries on February 10, 2024, which remains on the Peacock streaming platform without the incorporation of the Photographs.

53.     On February 20, 2024, an attorney for Run-DMC sent Plaintiffs a letter demanding that Plaintiffs immediately cease and desist from any communication with NBCUniversal and Believe Entertainment, wrongfully claiming that Run-DMC owned all rights in and to the Photographs, and threatening Plaintiffs with legal action.

54.     On information and belief, Defendants have profited from their unauthorized reproduction, display, and distribution of the Photographs.

55.     Plaintiffs have suffered damages caused by Defendants' interference with Shoebio's exclusive rights in and to the Photographs and the copyright to same, including, but not limited to lost profits, and diminution of the value of the copyrights to the Photographs, particularly since the Photographs concern what is likely to be the last performance by the artist group Run-DMC, which on information and belief, has now formally separated.

## FIRST CAUSE OF ACTION
### Copyright Infringement
### (Against All Defendants)

56.     Plaintiffs repeat and reallege the allegations set forth above as through fully set forth herein.

57.     The Photographs are Shoebio's unique and original expression and therefore they are copyrightable subject matter under the laws of the United States.

58.     Shoebio is the author of the Photographs.

59.     The Photographs are original works of authorship.

60.     The Photographs have been fixed in a tangible medium of expression.

4875-4041-3888, v. 1

61. The Photographs were created by Shoebio's own artistic judgment and creativity.

62. The Photographs are copyrightable subject matter under the laws of the United States.

63. Prior to Defendants' unauthorized use of the Photographs in the Docuseries, the Photographs were unpublished.

64. Plaintiffs never granted a license to Defendants, or any of them, for the use, reproduction, display, distribution, or publication of the Photographs in the Docuseries.

65. Plaintiff never granted a license to Defendants, or any of them, for the use, reproduction, display, distribution, or publication of the Photographs in any context, other than for the agreed use by Run-DMC for non-commercial social media purposes.

66. Run-DMC and the Blamoville Defendants, without Plaintiffs' knowledge or consent, purported to issue a license to Believe Entertainment to use, publish, reproduce, display, and distribute the Photographs in (at least) the Docuseries, and then released, reproduced,and distributed the Photographs to Believe Entertainment.

67. Neither Run-DMC nor the Blamoville Defendants obtained Shoebio's authorization or consent to license, reproduce, display, publish, or distribute the Photographs, nor did they credit or compensate Shoebio for use of the Photographs, and they wrongfully claimed all rights in the Photographs, in blatant and knowing derogation of Shoebio's rights as their author and copyright owner.

68. Run-DMC and the Blamoville Defendants' unauthorized licensing, reproduction, and distribution of the Photographs is an infringement of Shoebio's copyright in the Photographs, and in violation of Shoebio's rights under the Copyright. Act.

69.     Believe Entertainment, NBCUniversal, and Peacock have published, reproduced, displayed, and distributed the Photographs in the Docuseries, without Shoebio's knowledge or consent.

70.     Believe Entertainment, NBCUniversal, and Peacock failed to obtain Shoebio's authorization to publish, reproduce, display, or distribute the Photographs in the Docuseries.

71.     Believe Entertainment, NBCUniversal, and Peacock's unauthorized publication, reproduction, display, and distribution of the Photographs, including in the Docuseries, are infringements of Shoebio's exclusive rights under the Copyright Act.

72.     As a result of the foregoing, each of the Defendants violated the Shoebio's exclusive right to reproduce the Photographs, in violation of 17 U.S.C. §§ 106(1) and 501.

73.     As a result of the foregoing, each of the Defendants violated the Shoebio's exclusive right to distribute Photographs, in violation of 17 U.S.C. §§ 106(3) and 501.

74.     As a result of the foregoing, each of the Defendants violated the Shoebio's exclusive right to display the Photographs, in violation of 17 U.S.C. §§ 106(5) and 501.

75.     Before their reproduction, display, and distribution in the Docuseries, the Photographs were unpublished.

76.     By virtue of being original Photographs of the Concert from a unique vantage point of what is likely the last performance by the group Run-DMC, the Photographs have significant commercial value, which Defendants misappropriated for themselves.

77.     As a direct and proximate result of the aforementioned acts by Defendants, Plaintiffs have been harmed and suffered damages in an amount to be proven at trial.

78.     As a direct and proximate result of the aforementioned acts by Defendants, Plaintiffs have suffered irreparable harm, and if Defendants are not enjoined from exploiting the

Photographs in the future, they will continue to damage Plaintiffs and cause irreparable harm for which Plaintiffs have no adequate remedy at law. Plaintiffs are thus entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C § 502, prohibiting Defendants from infringing the copyrights in and to the Photographs, including but not limited to, by reproducing, displaying, licensing, distributing, or making any unauthorized use of the Photographs in any manner and on any platform or in any context, and from publishing, circulating, marketing, advertising, promoting, disposing of any copies of the Photographs, and from making any derivative works from the Photographs.

79.    Run-DMC's and the Blamoville Defendants' violations of the copyrights in the Photographs were willful and deliberate and justify an award of attorneys' fees and costs to Plaintiffs pursuant to 17 U.S.C § 505.


**SECOND CAUSE OF ACTION**
**Declaratory Judgment**
**(Against Run-DMC and the Blamoville Defendants)**

80.    Plaintiffs repeat and reallege the allegations set forth above as through fully set forth herein.

81.    Shoebio is the author of the Photographs.

82.    The Photographs are original works of authorship.

83.    The Photographs have been fixed in a tangible medium of expression.

84.    The Photographs were created by Shoebio's own artistic judgment and creativity.

85.    The Photographs are copyrightable subject matter under the laws of the United States.

86.     At no time did Shoebio transfer his copyright in and to the Photographs to Run-DMC, the Blamoville Defendants, NBCUniversal, Peacock, or Believe Entertainment.

87.     As such, Shoebio is the rightful copyright owner of the Photographs.

88.     On information and belief, Run-DMC and/or the Blamoville Defendants have wrongfully asserted authorship of the Photographs and exclusive ownership of them.

89.     Run-DMC and/or the Blamoville Defendants have wrongfully asserted they retain all copyrights in and to the Photographs.

90.     Pursuant to 28 U.S.C. § 2201 this Court has the authority to decide actual controversies within this jurisdiction.

91.     For the reasons stated above, there is an actual controversy between Shoebio, on the one hand, and Run-DMC and the Blamoville Defendants on the other hand, regarding authorship, ownership and copyrights in the Photographs.

92.     Accordingly, Shoebio is entitled to a judgment declaring him the author of the Photographs, and the sole owner of the Photographs and of the rights, including copyright, in and to the Photographs.

### THIRD CAUSE OF ACTION
### Providing False Copyright Management Information
### (Against Run-DMC and the Blamoville Defendants)

93.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

94.     Plaintiffs included copyright management information ("CMI") in connection with the Photographs, including, but not limited to, conveying to the Blamoville Defendants and Run-DMC that Shoebio was author of the Photographs at the time of delivery of the Photographs

to Blamoville Jr. by clearly identifying Shoebio as the author of the Photographs in the folder name of the Dropbox file.

95.     Run-DMC and the Blamoville Defendants had actual knowledge that Shoebio was the author of the Photographs.

96.     Run-DMC and the Blamoville Defendants intentionally and knowingly removed copyright management information identifying Shoebio as the author of the Photographs.

97.     On information and belief, Run-DMC and the Blamoville Defendants intentionally and knowingly altered copyright management information by falsely crediting the Photographs to themselves.

98.     Removal and falsification of such copyright management information violates 17 U.S.C. § 1202(b).

99.     Run-DMC and the Blamoville Defendants distributed copies of the Photographs to the other Defendants knowing that copyright management information had been removed and altered without Shobio's knowledge and without his authority.

100.    Run-DMC and the Blamoville Defendants knew or had reasonable grounds to know that falsifying the CMI would enable and facilitate copyright infringement by concealing the fact that the Photographs originated with Shoebio.

101.    Without Plaintiffs' knowledge or consent, Defendants copied Shoebio's Photographs and, by claiming credit for them in derogation of Shoebio's copyrights, intentionally induced, enabled, and facilitated copyright infringement, provided false copyright management information, and distributed that false information along with the Photographs when they unlawfully licensed the Photographs and distributed them to NBCUniversal, Peacock, and Believe Entertainment.

102.    Plaintiffs have been injured by Defendants' falsification of the CMI and are therefore entitled to damages in an amount to be proven at trial.

103.    As a direct and proximate result of the foregoing acts of Run-DMC and the Blamoville Defendants, Plaintiffs are entitled to recover statutory damages pursuant to 17 U.S.C. § 1203(c)(3) in a sum of at least $2,500 and up to $25,000 for each violation of 17 U.S.C. § 1202.

104.    Run-DMC's and the Blamoville Defendants' removal, falsification, and concealment of Shoebio's CMI identifying him as the author of the Photographs was willful and deliberate and justify an award of attorneys' fees and costs to Plaintiffs pursuant to 17 U.S.C. § 1203(b)(5).

## FOURTH CAUSE OF ACTION
### Misrepresentation
### (Against the Blamoville Defendants and Defendant Run-DMC)

105.    Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

106.    On August 11, 2023, Blamoville Jr., on behalf of and for Blamoville Sr. and Run-DMC, verbally made statements of material fact to Shoebio at the time Shoebio created the Photographs while they were backstage at the Concert, including, *inter alia*: that Run-DMC might use any photographs taken by Shoebio and his colleague, including the Photographs, only on social media; that Run-DMC would inform Shoebio and obtain approval from Plaintiffs before any use was made of the Photographs or any of them; that Plaintiffs would be credited in connection with any of the photographs Shoebio and his colleague took of the event, including the Photographs; and that the parties would document their understanding concerning any of the photographs captured by Plaintiffs during the Concert, including the Photographs, before any use

other than on social media was made of them, including with respect to credit and compensation for the use of, any of Plaintiffs' photographs from the Concert, including the Photographs, in writing.

107.    These statements were false.

108.    At the time Blamoville Jr. made these statements on behalf of and for Blamoville Sr. and Run-DMC, the Blamoville Defendants and Defendant Run-DMC knew that they did not intend to and were not going to limit their use of any of Plaintiffs' photographs, including Shoebio's Photographs; that they did not intend to and would not contact Plaintiffs or obtain Plaintiffs' consent before using the Photographs or any of them; and did not intend to and would not credit the Photographs as being authored by Shoebio or compensate Plaintiffs for their use of the Photographs or any of them; or made or authorized these statements with reckless disregard as to whether they were true.

109.    At the time Blamoville Jr. made the above statements on behalf of and for Blamoville Sr. and Run-DMC, the Blamoville Defendants and Run-DMC did not intend to and knew that they would not enter into a written agreement with Plaintiffs regarding the crediting and use of, and compensation for the use of, any of Plaintiffs' photographs from the Concert, including Shoebio's Photographs; or made or authorized these statements with reckless disregard as to whether they were true.

110.    Blamoville Jr., on behalf of and for Blamoville Sr. and Run-DMC, made each and all of the foregoing statements with the intention that Shoebio would rely on them and to induce Shoebio deliver copies of the Photographs to the Blamoville Defendants and Run-DMC.

111.    Shoebio reasonably relied on Blamoville Jr.'s statements on behalf of and for Blamoville Sr. and Run-DMC, and provided the Photographs to Blamoville Jr.

4875-4041-3888, v. 1

112.    Shoebio's reliance on these statements was reasonable, as documenting an event and subsequently entering into a written agreement for compensation, credits, and use of photographs is common in Plaintiffs' industry.

113.    As a result of Shoebio's reasonable reliance on the August 11, 2023 statements of Blamoville Jr., on behalf of Run-DMC and Blamoville Sr., Plaintiffs have been damaged in an amount to be proved at trial.

114.    The acts of the Blamoville Defendants and Run-DMC were outrageous and committed with intent to defraud Plaintiffs, warranting an awartd of punitive damages.

### FIFTH CAUSE OF ACTION
### Tortious Interference with Economic Relations
### (Against the Blamoville Defendants and Defendant Run-DMC)

115.    Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

116.    Shoebio had an opportunity to enter into a license agreement for the use of his Photographs in the Docuseries with a representative of Believe Entertainment.

117.    The Blamoville Defendants and Run-DMC knew that Shoebio had an opportunity to enter into a license agreement for the Photographs with Believe Entertainment.

118.    Run-DMC and the Blamoville Defendants, via Blamoville Sr., actively and intentionally interfered with that licensing agreement by using wrongful means in that Blamoville Sr. misrepresented that Shoebio had no rights in the Photographs and was not the owner of the copyright in them, as well as applying undue pressure on Believe Entertainment to stop negotiating with Plaintiffs.

119.    Run-DMC and the Blamoville Defendants, via Blamoville Sr., acted solely for the purpose of harming Plaintiffs.

120.    Absent Blamoville Sr.'s interference, Plaintiffs would have entered into a licensing agreement to use the Photographs in the Docuseries, and as a result, would have received credit and compensation in connection therewith.

121.    As a result of the loss of the opportunity to enter into the licensing agreement, Plaintiffs have suffered damages in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
### Breach of Contract
### (Against the Blamoville Defendants and Defendant Run-DMC)

122.    Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

123.    Prior to and during the Concert, Blamoville Jr., on behalf of Blamoville Sr. and Run-DMC, entered into an agreement whereby KYD would not charge Run-DMC for photographic services in exchange for Run-DMC providing Plaintiffs with access to the backstage area of the Concert, the stage, and the pit, and that a written agreement would be entered into concerning any use of the the photographs captured by Plaintiffs other than for social media purposes.

124.    On August 7, 2023, Shoebio offered to waive KYD's standard rates for photographic services if Run-DMC would provide Plaintiffs with such access to the Concert.

125.    On or about August 9, 2023, Blamoville Jr., on behalf of Blamoville Sr. and Run-DMC, accepted Shoebio's offer.

126.    On August 11, 2023, Blamoville Jr., on behalf of Blamoville Sr. and Run-DMC, and Shoebio agreed to the essential terms of the contract, including that Plaintiffs would be notified in advance of any use of Plaintiffs' photographs of the Concert beyond noncommercial social media use and that credit and compensation would be memorialized in writing.

127.     Plaintiffs performed the photographic services and delivered photographs of the Concert, including the Photographs, to Blamoville Jr. as representative of Blamoville Sr. and Run-DMC.

128.     The Blamoville Defendants and Run-DMC breached the agreement by taking Shoebio's Photographs and licensing them to Believe Entertainment for use in the Docuseries without Plaintiffs' knowledge or consent and in the absence of a written agreement with Plaintiffs and without crediting Plaintiffs or compensating them in any way.

129.     Plaintiffs have been damaged by the contractual breaches of the Blamoville Defendants and Defendant Run-DMC in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### Unjust Enrichment – In the Alternative
### (Against All Defendants)

130.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

131.     During the Concert, Shoebio and his colleague provided photographic services and captured unique and original photographs of the event with the understanding that Plaintiffs would be credited and compensated for any uses of such photographs, including the Photographs, other than on social media.

132.     By using Shoebio's previously unpublished and valuable Photographs in the Docuseries, Defendants received the benefit of Plaintiffs' unique and highly sought after photographic services, as well as the benefit of Shoebio's Photographs themselves.

133.     By using Shoebio's previously unpublished and valuable Photographs in the Docuseries, Defendants have been unjustly enriched at Plaintiffs' expense and received the benefit of Plaintiffs' photographic services as well as Shoebio's Photographs for which, in equity and good conscience, Plaintiffs should be fairly compensated.

4875-4041-3888, v. 1

134.    Plaintiffs did not provide photographic services or the Photographs as a gift and understood that Plaintiffs would be notified prior to any use and receive both credit and compensation in the event that any of the photographs, including Shoebio's Photographs, were sought to be used in any way other than on social media.

135.    Plaintiffs are entitled to the equitable remedy of restitution as a result of Defendants' unjust enrichment at Plaintiffs' expense.

136.    Plaintiffs are entitled to the reasonable value of their services in connection with the creation of the Photographs as a result of Defendants' unjust enrichment at Plaintiffs' expense.

137.    By reason of the foregoing, Plaintiffs have been damaged and are entitled to judgment against Defendants for damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants on this Complaint as follows:

a) enter a judgment that Defendants have infringed upon Shoebio's copyrights in and to the Photographs;

b) preliminarily and permanently enjoin Defendants, their officers, directors, agents, partners, employees, and related companies and all persons acting for, with, by, through, or under them, from further infringement of Shoebio's copyrights in and to the Photographs, including further reproduction, display, distribution of the Photographs, on any platform and in any other location or venue;

c) order the impounding of any and all infringing articles and copies of any photographs created by Plaintiffs in Defendants' possession or control pursuant to 17 U.S.C. § 503;

21

d) Award damages, pursuant to the Copyright Act for each act infringement of the Photograph, including licensing fees and/or reasonable royalties, and profits permitted under the Copyright Act, in an amount to be determined at trial;

e) Award statutory damages, in an amount of at least $2,500 and up to $25,000 for each violation of 17 U.S.C. § 1202;

f) Award compensatory damages, restitution, and/or the reasonable value of Plaintiffs' services in an amount to be determined at trial;

g) Direct Defendants to pay Plaintiffs' costs of this lawsuit and its reasonable attorneys' fees allowable by the Court under 17 U.S.C. §§ 505 and 1203;

h) Award prejudgment interest at the maximum rate allowed by law;

i) Award punitive damages; and

j) Grant Plaintiffs such other, further, and/or different relief as to the Court may seem just and proper.

## JURY TRIAL DEMANDED

Pursuant to FED. R. CIV. P. 38(b), Plaintiff demands a trial by jury.

Dated: May 20, 2024

Respectfully submitted,

MAZZOLA LINDSTROM LLP

By: _____

Aimée Scala
Laura D. Castner
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
Tel. 917-913-8763
aimee@mazzolalindstrom.com
laura@mazzolalindstrom.com

*Attorneys for Plaintiffs Ferrin Green and Know Your Dope, L.L.C.*